1  JEFFREY M. RATINOFF (SBN197241)
   Email: jratinoff@mintz.com
2  KARINEH KHACHATOURIAN (SBN 202634)
   Email: kkhachatourian@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY
   AND POPEO P.C.
4  5 Palo Alto Square - 6th Floor
   3000 El Camino Real
5  Palo Alto, CA  94306-2155
   Telephone: (650) 251-7700
6  Facsimile:  (650) 251-7739

7  Attorneys for Plaintiff,
   CONTINENTAL D.I.A. DIAMOND PRODUCTS, INC.
8

9  ALFRED C. FRAWLEY (*pro hac vice*) (Maine Bar No. 2547)
   Email: afrawley@preti.com
10 WILLIAM D. HAGEDORN (*pro hac vice*) (SBN 199322)
   Email: whagedorn@preti.com
11 PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP
   One City Center, P.O. Box 9546
12 Portland, Maine  04112-9546
   Telephone: (207) 791-3000
13 Facscimile: (207) 791-3111

14 Attorneys for Defendants,
   DONG YOUNG DIAMOND INDUSTRIAL CO., LTD,
15 AND DONGSOO LEE

16

17                    UNITED STATES DISTRICT COURT

18                    NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL D.I.A. DIAMOND PRODUCTS, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DONG YOUNG DIAMOND INDUSTRIAL CO., LTD., a South Korean company, DONGSOO LEE, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 08-2136 SI<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:  Honorable Susan Illston<br><br>Complaint Filed:    April 24, 2008<br>Trial Date:         None Set |

27

28

---

JOINT CASE MANAGEMENT STATEMENT;                      CASE NO.: CV 08-2136 SI

Pursuant to Civil L.R. 16-9 and the August 16, 2007 Clerk's Notice, Plaintiff CONTINENTAL D.I.A. DIAMOND PRODUCTS, INC. ("Plaintiff" or "Continental") and Defendants DONG YOUNG DIAMOND INDUSTRIAL CO., LTD (Dong Young and DONGSOO LEE ("Lee") (collectively "Defendants") jointly submit this Case Management Statement. Unless otherwise noted, the matters set forth herein were discussed and agreed upon by the parties during their Rule 26(f) conference. Where one party sets forth a separate statement concerning one of the required topics or indicates a disagreement with the other party's position, the signing of this statement does not constitute a concession or agreement with such a statement or can be construed as an admission.

### 1. Jurisdiction and Service

The parties agree that the Court has subject matter jurisdiction over Continental's claims and Defendants' counterclaims under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. No issues currently exist with respect to personal jurisdiction and venue. The parties also agree that this Court has subject matter jurisdiction over Plaintiff's federal claims stated herein under 15 U.S.C. §§ 1121, 1125(a) and 28 U.S.C. §§ 1331, 1338. Both parties believe that venue in the Northern District of California is proper. All named parties have appeared and have been served with the Complaint and Counterclaim.

### 2. Facts

*Plaintiff's Statement:*

Continental is a California corporation that designs, manufactures, sells and markets professional quality diamond-containing saw and cutting blades, grinding wheels, resin polishing pads, core drills, milling bits, and profile tooling and other tools for working stone, marble, granite and concrete ("Products"). Continental's Products are sold in the United States and abroad through distributors and wholesalers, which in turn, sell Products to contractors, specialty fabricators and retail supply stores.

Continental has trademark rights to the trademark and trade name and logo comprising "Continental D.I.A. Diamond Products, Inc." ("Trade Name" or "Continental Logo") and sells its

1 Products under various iterations of Continental's "TERMINATOR" mark (collectively "Marks"). Continental has developed certain confidential proprietary information relating to the pricing, profit margins, design, modification, composition, specifications and method of manufacture and marking of certain Continental Products (collectively referred to as "Proprietary Information").

Dong Young is a South Korean company manufacturing professional diamond-containing tools such as core drills, saws, grinding wheels and polishing wheels used to process stone, marble and concrete. Lee is a citizen of South Korean and is the owner and president of Dong Young.

On April 9, 2004, Continental and Dong Young entered into a manufacturing and license agreement ("License Agreement") under which Continental granted Dong Young a limited license to use the Proprietary Information necessary to manufacture certain diamond-containing stone-cutting products for Plaintiff; and to apply certain Marks to such products. In particular, the License Agreement restricted the use of Continental's Proprietary Information and the Continental and Marks only to the extent necessary to manufacture and produce diamond-containing stone-cutting products exclusively for Continental. Further, the License Agreement restricted the sale of any such products only to Continental.

Consistent with the terms of the License Agreement, Dong Young used Continental's Proprietary Information to manufacture diamond-containing stone-cutting products exclusively for Continental and shipped such products bearing the Marks to Continental. As provided by the License Agreement, the manufacturing of such products was done under strict quality requirements dictated and monitored by Continental.

Beginning on or about March 7, 2007, Lee began sending emails to Continental's existing and prospective customers wherein he: (a) revealed that Dong Young supplied certain diamond-containing stone-cutting products to Plaintiff; (b) enclosed images of diamond-containing stone-cutting products that appeared to be the products and/or unauthorized copies, imitations or replicas thereof that Dong Young manufactured for Continental under the terms of the License Agreement; and (c) offered to sell such products directly to those customers at a lower price than the purported identical Continental Products.

Some, if not all of the diamond-containing stone-cutting products pictured in Lee's emails

had certain Marks affixed thereto, and most, if not all, of such pictured products were the same or nearly identical in shape, size, design, color and appearance to Continental's Products. To entice Continental's existing and prospective customers to purchase products directly from Dong Young rather than Continental, Lee offered to send these customers samples of any of the products for testing. Lee, with the full knowledge that his and Dong Young's activities were in breach of the License Agreement and to prevent Continental from discovering such breaches, asked that these customers keep the inquiries made by Lee and Dong Young confidential.

On or about May 4, 2007, Lee of Dong Young began sending emails to Continental's existing and prospective customers wherein Lee enclosed images of products that appeared to be the same diamond-containing stone-cutting products that Dong Young agreed to manufacture for Continental under the License Agreement. Some, if not all, of such pictured products appeared to be the same or nearly identical in shape, size, design, color and appearance to Continental Products, but noticeably lacked any Marks. Defendants products used these solicitations as "bait" to generate interest and entice a response from Continental's existing and prospective customers so Lee could then disclose that Dong Young manufactures diamond-containing stone-cutting products for Continental and offer to sell the same or nearly identical products directly to Continental's customers at a lower price than the purportedly identical Continental Products. During the aforementioned solicitations, Continental believes that Defendants improperly disclosed some of Continental's Proprietary Information.

On or about September 28, 2007, Vincent Salemi, president of Continental, met to with Lee in Continental's offices, located in San Carlos, California. In that meeting, Mr. Salemi confronted Lee regarding his and Dong Young's improper and wrongful conduct. Lee admitted that he had wrongfully solicited Continental's customers and then apologized and claimed he would not repeat same "mistake" again. Mr. Salemi ended the meeting by informing Lee that Continental would no longer do business with either Lee or Dong Young.

In or about November 2007, Lee met with Mr. Salemi again in Continental's San Carlos, California offices. During that meeting, Lee acknowledged the termination of the License Agreement and asked for a second chance and asked whether Continental would resume doing

business with Dong Young. Mr. Salemi rejected Lee's request.

Continental believes that

- Defendants have and continue to improperly solicit Plaintiff's customers by stating that Dong Young is manufacturing certain diamond-containing stone-cutting products for Plaintiff and offer for sale those products or purported equivalents thereof to Plaintiff's customers in the manner described above in violation of the terms of the License Agreement.

- Defendants have and continue to make false and misleading statements to customers by offering to sell them un-branded Continental Products.

- Defendants have and continue to make false and misleading statements to customers by offering to sell them products that are of the same specifications as TERMINATOR® -branded Products because they are manufactured using Plaintiff's Proprietary Information, which Dong Young false claims to have the right to use and/or allegedly owns.   .

Defendants' use of Continental's Marks in its offers for sale, marketing materials, business documents, business meetings and otherwise in commerce has and is likely to cause confusion and mistake with Continental's Marks among the consumers. Plaintiff believes that Defendants' use of the Marks is calculated to trade off the goodwill and reputation of the Marks and Continental by passing-off Defendants' products. Likewise, Defendants' passing-off products that are identical to Plaintiff's CONTINENTAL D.I.A. trademark, trade name and TERMINATOR® -branded products in this manner tarnishes the goodwill and reputation of Plaintiff and the Marks.

Continental further believes that the aforementioned conduct has caused confusion, deception and mistake among the consuming public by creating the erroneous impression that the goods sold, offered for sale, distributed or advertised by Defendants have been manufactured, approved, authorized, sponsored, endorsed, and/or guaranteed by Plaintiff.

Plaintiff believes that as a result of Defendants' aforementioned misconduct, Continental's actual and prospective customers have purchased and will continue to purchase diamond-containing stone-cutting products from Defendants instead of from Continental. Thus, on April 24, 2008, Continental filed this action against Defendants pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq., and in particular, for trademark infringement in violation of 15 U.S.C. §§ 1114; false designations of origin, false advertising, and trademark infringement and unfair competition, all in

1  violation of 15 U.S.C. § 1125(a); for violations of California's Unfair Competition Law, Cal. Bus.
2  & Prof. Code § 17200 et seq.; for violation of California's common law for unfair competition; and
3  for breach of contract under California law ("the Complaint"). *See generally* Docket No. 1.
4       Defendants failed to timely answer the Complaint and the Clerk entered default against
5  them. Docket Nos. 12-13. Shortly thereafter, Defendants sought and obtained a stipulation from
6  Continental relieving them from default and for additional time to answer the Complaint. Docket
7  No. 14.
8       On June 26, 2008, Defendants filed their Answer, Affirmative Defenses, and
9  Counterclaims against Continental. Docket No. 18 ("Counterclaim"). The Counterclaim alleges
10 that starting in 1997, Continental began purchasing various products, including drill bits and
11 cutting blades, manufactured by Dong Young. Counterclaim, ¶ 3. In accordance to the parties'
12 agreement, Continental was required to pay in full for the products within 60 days of delivery. *Id*.
13 For the next ten years, until about September of 2007, Continental paid such invoices within 60
14 days of delivery. *Id*. at ¶¶ 3-4. Sometime thereafter, Continental allegedly failed to pay for
15 approximately $393,515.80 worth of bits and cutting blades delivered by Dong Young between
16 July and September 2007. *Id*. at ¶¶ 4-5. Further, Continental allegedly refused to pay for the
17 amounts due and owing. *Id*. at ¶ 5
18      In addition, Defendants allege that Continental established a separate company, GM
19 Diamond, in South Korea. *Id*. at ¶ 6. GM Diamond initially manufactured grinding and polishing
20 wheels and therefore did not compete with Dong Young. *Id*. at ¶ 7. However, in October 2007,
21 GM Diamond allegedly established a branch office that started manufacturing products, such as
22 cutting tools, that were similar to those manufactured by Dong Young. *Id*. After establishing that
23 branch office, GM Diamond purportedly hired several of Dong Young's "key" employees. *Id*. On
24 information and belief, Defendants allege that GM Diamond and Continental induced these
25 employees to work for GM Diamond in an effort to directly compete with Dong Young. Id. at ¶ 8.
26 After GM Diamond hired these employees, Continental purported to cease all business relations
27 with Dong Young. *Id*.
28      Based on these limited facts, Dong Young asserted the following causes of action against

- 5 -

JOINT CASE MANAGEMENT STATEMENT;                              CASE NO.: CV 08-2136 SI

1  Continental: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair
2  Dealing; (3) Fraud; (4) Quantum Meruit/Quasi Contract; (5) Promissory Estoppel; (6) Unjust
3  Enrichment and Constructive Trust; (7) Intentional Interference with Prospective Economic
4  Advantage; (8) Negligent Interference with Economic Advantage; (9) Accounting; (10)
5  Commercial Defamation; (11) Trade Libel; (12) Unfair Competition under Cal. Bus. & Prof. Code
6  § 17200 et seq.; (13) Conversion/Trover; and (14) Constructive Fraud.   Since Defendants fail to
7  allege any additional facts and merely recite the legal elements for each of these causes of action,
8  Continental moved to dismiss all but the counterclaim for breach of contract fail as a matter of law.

9  *Defendants' Statement:*

10  Defendant/Counterclaim Plaintiff Dong Young Diamond Industrial Co., Ltd. ("Dong
11  Young") is a South Korean company manufacturing professional diamond-containing tools such as
12  core drills, saws, grinding wheels and polishing wheels used to process stone including marble and
13  concrete. Defendant DongSoo Lee is a principal of the Defendant. Defendant herein refers to the
14  Defendants in the collective as "Dong Young".

15  Plaintiff/Counterclaim Defendant Continental D.I.A. Diamond Products Inc.
16  ("Continental"), which is run by Vincent Salemi, is a California corporation which purchased the
17  products manufactured by Dong Young Diamond and then sold them under its trademark of
18  "TERMINATOR" in the US market ("Continental").

19  Since around 1997, Dong Young has supplied cutting tools to Continental.  Until 2007,
20  Continental paid all invoices in accordance with the parties' agreement that each invoice be paid in
21  full within 60 days after the respective delivery date.  In accordance with orders placed by
22  Continental, from July through September, 2007 Dong Young supplied to Continental certain
23  products of which the total value amounted to $393,515.80.  These products included: (i) core drill
24  bits valued at $20,261.50 on July 7, 2007; (ii) core drill bits valued at $36,201 on July 13, 2007;
25  (iii) core drill bits valued at $34,678.50 on July 21, 2007; (iv) blades valued at $44,213.30 on July
26  27, 2007; (v) blades valued $84,563 on August 10, 2007; core drill bits valued at $47,110.50 on
27  August 31, 2007; and finger bits valued at $126,488 on September 15, 2007 (the "Products").
28  Despite the parties' prior agreement as to the timing of payment, Continental did not pay

1  Dong Young for the Products within 60 days of delivery.   Further, despite repeated requests for
2  payment by Dong Young, Continental to this date has failed to pay the amounts due for the
3  Products, and instead ceased all business transactions with Dong Young after having been supplied
4  the Products by Dong Young.

5  Dong Young also alleges that while running its business selling diamond tools in the
6  United States market, Continental established GM Diamond at 651-1 Munhyoung-ri, Opo-up,
7  Gwangju-si, Gyounggi-do, Korea ("GM Diamond").  Unlike Dong Young, whose primary
8  products are cutting tools, GM Diamond initially manufactured mostly grinding and polishing
9  tools. Dong Young alleges, however, that GM Diamond established a branch office at 2nd Floor,
10 246-46 Gojan-dong, Namdong-gu, Incheon, Korea on and about October 17, 2007.  After
11 establishing this branch office, GM Diamond started manufacturing cutting tools that are
12 substantially similar to those manufactured by Dong Young.  The principal office of GM Diamond
13 is believed to have been transferred to the location of the branch office and the two offices were
14 integrated on April 1, 2008.

15 Dong Young further alleges that at or around the time that GM Diamond established its
16 branch office in October of 2007, GM Diamond hired several of Dong Young's key employees in
17 Korea, including Young-Se Yoon, Nam-Hoon Song, Dong-Hyun Baek, and Tae-Jin Park.  Dong
18 Young believes that through communications with one or more of these Continental and GM
19 Diamond induced these key employees of Dong Young to work for GM Diamond in an effort to
20 establish a Korean business that was directly competitive with Dong Young.  Continental ceased
21 business relations with Dong Young after having been supplied the Products by Dong Young (for
22 which Continental has failed to pay).

23 Dong Young further submits that its contractual relationship with Continental did not
24 preclude Dong Young from contacting any prospective U.S. customer.  Dong Young requested
25 that Continental allow it to attend U.S. trade shows at the time Dong Young entered into the
26 License Agreement with Continental.  Continental verbally accepted that request, and Dong Young
27 attended 6 trade shows from 2004 through 2007.  Vincent Salemi, of Continental, was aware of
28 Dong Young's presence at the trade shows and usually visited Dong Young's booth.

1    Dong Young was just one of many Continental vendors. Dong Young never sold
2 Continental products to any customer other than Continental. Because all of Dong Young's
3 products exported to the United States are supplied on an original equipment manufacture, or
4 "OEM," basis, Dong Young did not sell products with Continental's brand name to any other
5 customers.

6    In 2006, Continental promised Dong Young that it would purchase USD 3 million worth
7 products from Dong Young annually, beginning in 2007. In reliance on such promise, Dong
8 Young built a new factory with a bank loan and greatly increased its manufacturing capacity.
9 However, Continental's orders never increased in 2007, and Continental did not accept Dong
10 Young's offers to sell newly-developed products.

11   In or around September 2007, Continental terminated dealings with Dong Young, stopped
12 making payments that were due. Due to the substantial decrease in Dong Young's sales and
13 Continental's failure to pay its account receivables (USD 393,515.80), Dong Young faced serious
14 financial challenges. Around the same time that Continental terminated its dealings with Dong
15 Young, Dong Young understands that Mr. Salemi approached Diamax, one of Dong Young's U.S.
16 customers, and offered to sell GM Diamond's/Continental's products to Diamax, saying that Dong
17 Young would go bankrupt soon, which further disturbed Dong Young's business.

18   Dong Young alleges that Diamax representatives visited Dong Young on April 14, 2008
19 and informed Dong Soo Lee that one of Dong Young's former employees had offered to sell
20 products to Diamax on behalf of Continental at a price lower than Dong Young's. Dong Young
21 also alleges that Vincent Salemi asked Diamax to start dealings with GM/Continental. Lee visited
22 Diamax's office in Atlanta on July 14, 2008 to discuss Diamax's request to lower prices. During
23 the discussion, a Diamax representative informed Mr. Lee that Mr. Salemi had visited Diamax in
24 Atlanta and asked him to testify in court for Continental, saying Dong Young would go out of
25 business soon. Dong Young is informed that the Diamax representative said that he refused such
26 request.

27 / / /
28 / / /

- 8 -
JOINT CASE MANAGEMENT STATEMENT;                               CASE NO.: CV 08-2136 SI

### 3. **Legal Issues**

*Plaintiff's Statement*

Due to the fact that discovery has yet to commence, Plaintiff cannot identify every possible legal issue that may arise during this litigation. However, based on Defendants' admissions and the emails evidencing Defendants' wrongdoing and breach, Plaintiff believes that the question of liability is not subject to dispute and therefore may be resolved by summary judgment. Further, Plaintiff has identified several legal issues in its pending motion to dismiss Defendants' Counterclaims and Motion to Strike Affirmative Defenses (Docket Nos. 22-23).

*Defendants' Statement:*

Due to the fact that discovery has yet to commence, Defendants/Counterclaimants also cannot identify every potential legal issue that may arise during this litigation. However, based on the parties' contractual agreements, their course of dealings and documentary and other evidence of Plaintiff's breach, Defendants/Counterclaimants believe that the question of Plaintiff's liability for breach of contract is not subject to dispute and therefore may be resolved by summary judgment. Additionally, a number of outstanding legal issues are pending before the Court in connection with Plaintiff's pending Motion to Dismiss and Motion to Strike.

### 4. **Motions**

There are presently two motions on calendar: (1) Plaintiff's motion to dismiss Defendants' Second through Fourteenth Causes of Action asserted in their Counterclaim; and (2) Plaintiff's Motion to Strike Portions of the Defendants' Answer. These motions are set to be heard by this Court on August 29, 2008. Plaintiff also anticipates that it may have to file an additional motion to dismiss if Defendants are permitted to amend some or all of its counterclaims that are subject to the pending motion to dismiss.

With respect to future motions, the parties anticipate that there may be a need for discovery motions, such as motions to compel and motions for protective orders. Plaintiff also anticipates that it will file a summary judgment motion supporting its breach of contract, Lanham Act, and unfair competition claims because Defendants' breaches of contract and wrongdoing are not subject to dispute. Further, Plaintiff anticipates that it will file several summary judgment motions

with respect to Defendants' counterclaims if any survive Plaintiff's motion to dismiss.

Defendants anticipate that they will file a summary judgment motion on their breach of contract counterclaim and perhaps on additional counterclaims after discovery is complete. Defendants also anticipate that they may file summary judgment motions on some or all of Plaintiff's claims at the close of discovery.

### 5. Amendment of Pleadings

Plaintiff believes that after conducting discovery, it may amend its Complaint to include additional facts supporting its claims and/or additional claims under California law or the Lanham Act. Defendants also believe that after conducting discovery, they may amend their counterclaims to include additional facts supporting those claims. Further, if the Court were to grant any portion of Plaintiff's motion to dismiss, Defendants anticipate that they would be afforded the opportunity to amend any claims the Court deemed insufficiently pled. Further, depending on how the Court rules on Plaintiff's pending motion to dismiss, Defendants may have to amend its Counterclaim by removing some or all of the above-counterclaims at issue in the motion and/or include additional detailed factual allegations to support those counterclaims.

### 6. Evidence Preservation

*Plaintiff's Statement:*

Plaintiff asserts that it has taken reasonable steps to preserve potentially relevant evidence, including hard copy and electronic documents, and has ceasing any applicable document retention policies that may result in the destruction or erasure of such evidence. Plaintiff has repeated asked that Defendants preserve all email communications and financial records as they will be critical to showing the extent of Defendants' wrongdoing.

*Defendants' Statement:*

Defendants also assert that they have taken reasonable steps to preserve potentially relevant evidence, including hard copy and electronic documents, and have ceased any applicable document retention policies that may result in the destruction or erasure of such evidence.

### 7. Disclosures

Per the deadline set by Court's initial Case Management Order, on August 1, 2008, Plaintiff

1 served Defendant with its initial disclosures. Defendants served Plaintiff with their initial
2 disclosures on August 8, 2008.

**8. <u>Discovery</u>**

    **a. Discovery Taken To Date.**

To date, no discovery has been taken by either Defendants or Continental.

    **b. Scope Of Anticipated Discovery.**

The lists of topics provided below are in no way meant to be limiting. Continental and Defendants retain the right to pursue discovery on any topic to which it is entitled to discovery under the Federal Rules of Civil Procedure, the Local Rules for the Northern District of California, and the Discovery Orders entered by this Court.

*Plaintiff's Statement:*

Continental's discovery plan will include interrogatories, request for the production of documents, records subpoenas, and depositions. The information that Continental will seek during discovery is as follows:

(1) Confirmation from its customers that Defendants solicited them;

(2) Confirmation that Defendants improperly used and disclosed Continental's trademarks and confidential and proprietary information;

(3) All of the business dealings between Defendants and its customers;

(4) The internal communications at Defendants concerning its dealings with Continental and other customers;

(5) Information concerning Defendants' knowledge and intent of wrongdoing;

(6) Issuing a subpoena to Defendants' ISP provider and email services to confirm that Defendant has not destroyed critical emails that demonstrate wrongdoing; and

(7) The precise amounts that Defendants contend that they owed, including tracing those amounts to the work that was performed.

Continental also intends to take discovery concerning all facts, documents, and evidence that support Continental's affirmative defenses to the counterclaims that survive Continental's motion to dismiss and motion to strike. Continental also intends to take discovery on all facts,

documents, and evidence that support Continental's damages claims.

***Defendants' Statement:***

Defendants' discovery plan will include interrogatories, request for the production of documents, records subpoenas, and depositions.  The information that Defendants will seek during discovery includes the following:

1) The April 9, 2004 License Agreement;

2) Continental's trade name, logos and marks and related filings with the USPTO, and documents related to the use of such trade name, logos and marks;

3) Documents and communications regarding Continental's and Dong Young's agreement relating to Dong Young supplying tools to Continental;

4) Documents and communications relating to Continental's agreement to pay all of Dong Young's invoices in full within 60 days after Dong Young's delivery of manufactured products.

5) Documents and communications regarding the License Agreement;

6) Documents relating to products manufactured under the License Agreement and pursuant to any other written or oral agreement between the parties;

7) Confidential, proprietary specifications and requirements for products manufactured under the License Agreement and pursuant to any other written or oral agreement between the parties;

8) Invoices and billing statements and other related documents and communications regarding products manufactured under the License Agreement and pursuant to any other written or oral agreement between the parties;

9) Documents and communications between Defendants and Continental 's actual and potential customers regarding the sale of bits and blades manufactured by Dong Young;

10) Invoices and billing statements and other related documents and communications regarding products sold or offered for sale by Defendants;

11) Documents and communications between Plaintiff and Defendant regarding Defendants' alleged breach of the License;

1  12) Documents and communications relating to Plaintiff's refusal to pay amounts owed to Defendants.

### c. Limitations Or Modifications of The Discovery Rules.

The parties agree that discovery will not be conducted in phases or be limited to or focused upon any particular issues. The parties further agree that discovery will be conducted as provided by the Federal Rules of Civil Procedure and do not believe that any limitations or modifications of the Discovery Rules are necessary at this time.

### d. Electrically Stored Information.

The parties anticipate that some relevant documents will include electronically stored information, such as emails. Continental believes that electronic information and documents should also be produced on electronic media, and where possible in their native format. Where it is not possible to produce electronic documents in their native format, they should be produced as .TIFF files (or similar formats) that are OCR searchable.

### e. Other Orders That Should Be Entered Under Rule 26(c).

Due to the sensitive nature of some of the materials subject to discovery, which may include personal and private information of third parties, Continental and Defendants believe that is necessary for the parties to enter into a stipulated protective order governing confidentiality to ensure that the disclosure of such materials is limited and will preserve their right to privacy. Further, during the course of discovery, the parties anticipate filing documents and things under seal, particularly those items relating to financial information, trade secret information, and other business confidential information. The parties will negotiate a Stipulated Protective Order based on the Northern District of California's model order, which will govern the disclosure of materials and information in this case and will govern the confidentiality of such materials and information.

### f. Proposed Discovery Plan.

See proposed case management schedule below.

### 9. Class Actions

This case is not a class action suit.

///

**10. Related Cases**

There are no related cases pending before this (or any other) Court.

**11. Relief**

*Plaintiff's Statement:*

Continental estimates that its damages incurred in this action total over $1.3 million, plus interest and attorney's fees. Because the action is in its infancy, the total interest accrued and the attorney's fees incurred are not known at this time. There may be further damages resulting from Defendants' wrongful use and/or disclosure of Continental's confidential information in breach of the parties' license agreement and damage to Continental's goodwill that it cannot calculate at this time because the scope and extent of these disclosures is unknown at this time, which may be revealed after Continental takes discovery.

*Defendant's Statement:*

Defendants are unable at this time to provide a complete calculation of the amount of damages. However, the invoiced amounts from Defendants to Plaintiff which remain unpaid are $393,515.80, plus interest. Discovery in this case has not yet commenced. Thus, fact discovery may shed further light on the amount of such damages. To the extent such calculation may depend upon expert analysis and investigation, such calculation will be disclosed in accord with the schedule for expert discovery.

As this lawsuit has just commenced, the total attorneys' fees and costs of suit incurred also remain to be determined. Likewise, as this lawsuit has just commenced, the amount of pre-judgment interest owed by Plaintiff, which accrues on an ongoing basis at the statutory rate, cannot be calculated at this time.

Defendants reserve the right to assert and/or elect one or more theories of recovery, as well as assert additional or alternative theories of recovery, and provide information concerning its damages computation after further factual and expert discovery and investigation.

**12. Settlement and ADR**

The parties believe that early settlement discussions may be fruitful after the Court rules on Continental's motion to dismiss Defendant's Counterclaim. Thus, the parties agreed to participate

- 14 -
JOINT CASE MANAGEMENT STATEMENT;                               CASE NO.: CV 08-2136 SI

in non-binding private mediation through JAMS. Per the Court's August 5, 2008 order, the parties are to complete mediation within 120 days from the date of that order. Additional mediation sessions might be appropriate after the Court hears and rules on any motions for summary judgment filed by the parties.

### 13. Consent to Magistrate Judge for All Purposes

The parties do not agree to consent to a Magistrate Judge for all purposes. However, the parties are agreeable to the assignment of a Magistrate Judge for the limited purpose of hearing discovery disputes should the Court chose to depart from its standing order on handling discovery disputes.

### 14. Other References

The parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation. As discussed above, the parties agree that non-binding mediation is the most appropriate form of ADR.

### 15. Narrowing of Issues

Where appropriate, the parties agree to narrow factual issues by stipulation and/or through requests for admission. In addition, the parties will streamline the presentation of evidence at trial by stipulating to the authenticity of certain documents and exhibits.

### 16. Expedited Schedule

At this time, the parties do not believe that this case may be handled on an expedited basis with streamline procedures.

### 17. Scheduling

The parties agree to and recommend that the Court adopt the following Case Management Schedule:

| | |
|---|---|
| Fact Discovery Cut-Off: | May 2009 |
| Expert Witness Disclosures: | May 2009 |
| Rebuttal Expert Reports | June 2009 |
| Expert Deposition Deadline | July 2009 |
| Dispositive Motions (hearing deadline): | August 2009 |

| | |
|---|---|
| Pre-Trial Conference | September 2009 |
| Trial | November 2009 |

However, if there are any outstanding pleadings issues after the resolution of Continental's pending motion to dismiss, i.e. the motion is denied or Defendants are granted further leave to amend, the parties acknowledge that these deadlines may need to be extended for a reasonable period of time to allow for the necessary discovery to take place. Such an extension will be the subject of a future joint case management statement, or a stipulation and corresponding court order.

**18.   Trial**

This case will be tried by a jury to the extent a jury may decide issues associated with the case. All other issues will be decided by the Court. The parties estimate that the trial will take approximately eight (8) days if the Court grants Continental's motion to dismiss Defendants' Counterclaim without leave to amend and approximately sixteen (16) trial days if some or all of the counterclaims subject to the motion to dismiss survive.

**19.   Disclosure of Non-party Interested Entities or Persons**

Both Defendants and Continental have filed their respective "Certification of Interested Entities or Persons" as required by Civil L.R. 3-16. The parties re-state their certifications as follows:

*Plaintiff's Statement:*

Pursuant to Civil Local Rule 3-16, the undersigned counsel of record for Plaintiff certifies that the following listed persons and entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of the proceeding:

| **Person/Entity** | **Relationship/Interest** |
|---|---|
| None | None |

This certification is made to enable the Court to evaluate possible disqualification or refusal.

*Defendants Statement:*

Pursuant to Northern District of California Civil Local Rule 3-16, the undersigned counsel of record for Defendants certifies that the following listed persons and entities (i) have a financial interest in the subject matter of the controversy or in a party to the proceeding, or (ii) have a non-financial interest in the subject matter or in a party that could be substantially affected by the outcome of the proceeding:

| **Person/Entity** | **Relationship/Interest** |
|---|---|
| None | None |

This certification is made to enable to Court to evaluate possible disqualification or refusal.

**20.    Other Matters**

There are no other matters that the parties need to bring to the Court's attention with respect to facilitating the just, speedy and inexpensive disposition of this matter.

Dated: August 20, 2008

/s/ Jeffrey M. Ratinoff
By: JEFFREY M. RATINOFF

Attorneys for Plaintiff,
Continental D.I.A. DIAMOND PRODUCTS, INC.

Dated: August 20, 2008

/s/ Alfred C. Frawley
By: ALFRED C. FRAWLEY
    WILLIAM D. HAGEDORN

Attorneys for Defendants,
DONG YOUNG DIAMOND INDUSTRIAL CO. and
DONGSOO LEE